It was argued for the university that it would probably be objected on the part of the defendant that there were no escheat lands in North Carolina, escheat being a consequence of feudal tenure, one of the conditions of which was that when the heritable blood of the tenant failed through want of relations, or by corruption of blood, that the feud should fall back to the lord. It must be admitted that was the correct idea of escheat, yet it is to be observed that this word having been used by the Legislature so late as 1789, where they speak, too, of lands thereafter to escheat, must have been understood by them to represent some other idea than that of escheat according to its strict technical meaning. They intended the act should have some effect; and one sense in which this word is sometimes used even in the old books, is this: the accidental and unexpected falling of lands to the lord for want of heirs. Another sense is, when those who held of the king (or public) die leaving no heir, and the lands relapse in fiscum. Co. Litt., 13, a. In this sense it is used in the act, and signifies that the university shall be entitled to all such lands as have been once appropriated, but by some accident have been left without any legal proprietor — no matter by what means they came into this situation, whether by a dying without heirs or by becoming an alien to the (374) Government, as was the case with many upon the adoption of a new form. If this interpretation be correct, it will lead us to another question, whether Mucklehenny be dead without heirs, or became an alien upon the declaration of independence. There is no positive evidence with respect to the first of these points, but the presumtive [presumptive] evidence is strong enough to warrant the jury in drawing such a conclusion. Where a man is absent a long time from the country, after going from it with an intention of returning, as if he go to sea and is not heard of in the course of six or seven years, it is usual in such cases to take probate of his will, grant letters of administration upon his estate, etc. He may be dead, and yet in such cases it may be utterly impossible to adduce any direct proof of his death, as suppose *Page 296 
the whole crew to be shipwrecked and drowned in the ocean. In the present case the owner has been absent upwards of thirty years, and no person claiming to be heir has appeared in all that time. This, also, is presumptive evidence sufficiently strong upon which to infer the fact that there are no heirs. It is proper here to remark that he was absent nine years or thereabout, from this country, before the commencement of the war; and if a space of six or seven years will raise these presumptions, then prior to 1776, when the declaration of independence took place, he was dead without heirs, and the land had escheated to Lord Granville, all whose proprietary rights came to this State by the State Constitution. In this view of the case it is apparent that the State was entitled to the land in question immediately upon the formation of the State Constitution, not as vacant lands, but as lands once appropriated, and of course never since subject to the laws and regulations respecting unappropriated land; and though the State may have granted these lands in 1780 to the defendants, yet that was a grant in which the State was deceived, or, more properly speaking, a grant issued by the officers of Government which they were not empowered by any law to issue. The officers are but the servants of the public, appointed for special ends, whose acts are only binding when within the limits prescribed to them by law. The grant is, therefore, void. It will be contended that the defendant has been in possession ever since 1780, a space of more than seven years; and this must be admitted. But does it not follow from thence that the jus possessionis which the State had was barred? Nullum tempus occurrit populo has been a good general rule, (375) without exception till the act of 1791, ch. 15. From 1780, then, to the time of grant to the university in 1789, this act had not run; and since 1789, when the title of the university accrued, until the commencement of this action, seven years have not elapsed. So that there is no bar, and as the State grant of 1780 is void, there is nothing to hinder the plaintiff's recovery.
It was argued, e contra, that the State grant of 1780 was good, and had been so decided in a great number of cases, though granted for lands not strictly vacant within the meaning of the entry laws; for the State, having once granted, shall not be permitted in ejectment to say, nor shall any one claiming under the State be permitted to say, the grant issued erroneously or fraudulently or surreptitiously, and is therefore void.
I am of opinion for the university as to all the points agitated at the bar, and for the reasons stated in the argument of the plaintiff's counsel. As to the grant of 1780, there have been many decisions that such grants shall be good until *Page 297 
avoided in a court of equity. I am of opinion, for my own part, that the grant is absolutely void ab initio, and that its invalidity may be shown upon a trial in ejectment. It was issued by the officers of the State without any authority for so doing, and is no more binding upon the State than if issued by any other person or persons not called Governor and Secretary. But let this point undergo further consideration and a decision that may settle the law. I will not oppose my opinion to that of adjudged cases.
The jury found for the university, subject to the opinion of the Court upon the question whether the grant of 1780, under the circumstances above stated, was a valid deed or not.
NOTE BY REPORTER. — Upon the trial of this cause it was objected that the action was not maintainable by the university, for two reasons: First, because the plaintiff in the ejectment must have the right of possession or right of entry, which is the same thing, and he who claims by escheat has not the jus intrandi. The keeping of possession by the defendant is a deforcement (3 Bl. Com., 173), and is not to be overturned by the mere entry of another, but only by the demandant's showing a better right in a course of law (3 Bl. Com., 179), and in such case he shall have a writ of escheat. 3 Bl. Com., 179. Second, the university being a corporation, can make no lease to try the title but under their corporate seal, by deed duly executed; and here there is no such lease.